UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN LEWIS,

     Plaintiff,

v.                                                        Case No. 8:24-cv-2889-JLB-AEP

ARAMARK CORRECTIONAL
SERVICES, LLC, *et al.*,

     Defendants.

                                 /

## ORDER

Before the Court is Plaintiff John Lewis's amended complaint (Doc. 8) filed *pro se* under 42 U.S.C. § 1983.   The amended complaint is before the Court for initial screening.   After careful review, the Court dismisses the amended complaint with leave to amend because it fails to state a claim on which relief may be granted against some of the named defendants.

## I. Screening Standard

A prisoner who seeks to proceed *in forma pauperis* in federal court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").[1]   This screening procedure requires the court to dismiss a

---

[1] Mr. Lewis was incarcerated when he filed his initial complaint.   He was released before he filed his

prisoner's civil action before service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1), (2).

The rules governing dismissals for failure to state a claim under the screening statutes are largely the same as those under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  And under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint may not rest on "'naked assertions[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Likewise, a complaint may be dismissed as frivolous when the Court discerns from its face "that the factual allegations are clearly baseless or that the legal theories are indisputably meritless."  *Davis v. Kvalheim*, 261 F. App'x 231, 235 (11th Cir.

---

amended complaint.  (Doc. 5; Doc. 8 at 2).  Screening under Section 1915A still applies because "prisoner" status turns on whether the plaintiff was confined when he initially filed the suit.

2008) (quoting *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotation marks omitted)).

## II. Allegations

Mr. Lewis asserts the following:[2]  Beginning on April 8, 2024, Mr. Lewis was incarcerated at the Hillsborough County Jail (HCJ) in Tampa, Florida.   (Doc. 8 at 5). He notified officials with HCJ, Aramark (which provides meals to the prisoners at HCJ), and Naphcare (which provides medical care for the prisoners at HCJ) that he suffered from celiac disease, "a severe gluten allergy. . . ."   (*Id*. at 9).   Naphcare documented that Mr. Lewis required a gluten-free diet.   (*Id*.).   Nevertheless, on several occasions between April 8, 2024, and December 22, 2024, Mr. Lewis received meals "contaminated" with gluten, meals with rotten food, or no meal at all.   (*Id*.).

The meals contained gluten because Aramark had no procedures to prevent "cross-contamination" of the food trays.   (*Id*.).   For example, "[g]loves and utensils were not changed between meal types, trays were not properly cleaned, and meals were mislabeled or switched to meet numerical quotas rather than dietary requirements."   (*Id*.).   Moreover, "Aramark employees direct[ed] inmate workers to relabel incorrect trays to meet shortages."   (*Id*.).   The Aramark employees,

---

[2] At the screening stage, the Court accepts the complaint's factual allegations (but not its legal conclusions) as true and considers them in the light most favorable to Plaintiff.   *See Williams v. Board of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

3

Defendants Ramesh, Rose, Heather, Brunson, Butler, and White, ignored warnings from Mr. Lewis and Naphcare medical staff about the problems with Mr. Lewis receiving meals contaminated with gluten.   (*Id.*).   Rose and Heather even mocked Mr. Lewis by calling him "Mrs. Universe".   (*Id.*).   Deputies and supervisors on Mr. Lewis's housing unit, who were aware of Mr. Lewis's condition and dietary needs, also contributed to the problem by "fail[ing] to verify the contents of delivered meals, sign[ing] off on incorrect trays, and return[ing] contaminated food back to [Mr. Lewis]."   (*Id.*).

Mr. Lewis suffered severe allergic reactions on numerous occasions because he was exposed to meals containing gluten.   (*Id.* at 10).   On at least five occasions, he received emergency medical care to treat those reactions.   (*Id.*).   He also suffered malnutrition and weight loss from missing meals, and psychological issues caused by his fear of receiving meals with gluten.   (*Id.* at 10−11).

Mr. Lewis submitted several grievances complaining about the issues with his meals and requesting access to the "ADA Coordinator."   (*Id.* at 10).   However, the "grievances were either denied without investigation, closed without response, or dismissed with no action taken."   (*Id.*).

Mr. Lewis contends that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.   (Doc. 8 at 3).   He also contends that in failing to accommodate his serious medical condition, Defendants violated the Americans with

4

Disabilities Act (ADA), 42 U.S.C. § 12132, and section 504 of the Rehabilitation Act

(RA), 29 U.S.C. § 701, *et seq.*  (*Id.*).  As relief, Mr. Lewis seeks compensatory

damages.  (*Id.* at 6).

### III. Discussion

A. Hillsborough County Sheriff's Office

Mr. Lewis identifies the Hillsborough County Sheriff's Office (HCSO) as a

defendant.  (Doc. 8 at 4).  To the extent Mr. Lewis alleges an Eighth Amendment

violation against the HCSO under 42 U.S.C. § 1983, a sheriff's office is not a legal

entity subject to suit under section 1983.  *See Faulkner v. Monroe Cnty. Sheriff's*

*Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013) (finding that Florida law has not

established Sheriff's offices as separate legal entities with the capacity to be sued and

affirming dismissal of a county sheriff's office).  Thus, the HCSO will be dismissed as

a party defendant to Mr. Lewis's Eighth Amendment claim.

The HCSO is, however, a proper party defendant to Mr. Lewis's ADA and RA

claims.[3]  The ADA was enacted by Congress "to provide a clear and comprehensive

national mandate for the elimination of discrimination against individuals with

disabilities."  42 U.S.C. § 12101(b)(1).  Title II of the ADA specifically targets public

entities, providing that "no qualified individual with a disability shall, by reason of

---

[3] *J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together.") (citation omitted).

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132.

Congress has explicitly provided that a "public entity" for the purposes of ADA coverage includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."   42 U.S.C. § 12131(1); *see also* 28 C.F.R. § 35.104 (defining "public entity" as, among other things, an "instrumentality of a State or States or local government").   A county law enforcement department is a public entity and thus a proper party to a claim for disability-based discrimination brought under Title II of the ADA.   *See Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1084 (11th Cir. 2007) (explaining that the plaintiff "could still attempt to show an ADA claim under the final clause in the Title II statute: that he was 'subjected to discrimination' by a public entity, the police, by reason of his disability.'").

Mr. Lewis's amended complaint alleges that the HCSO violated the ADA by failing to "accommodate [his] serious, medically documented disability (celiac disease) and for denying access to necessary accommodations and services."   (Doc. 8 at 3). The HCSO is a public entity and, therefore, is subject to claims brought under Title II of the ADA.   Nonetheless, because Mr. Lewis also sues Sheriff Chronister in his official capacity (Doc. 8 at 8), it would be duplicative to sue the HCSO.   *See, e.g., Doe*

*v. Hernando Cnty. Sch. Dist.*, 2025 WL 1796563, at \*6 (M.D. Fla. June 30, 2025) ("[A]n ADA claim brought against an individual in their official capacity is the functional equivalent of a suit against the agency itself.") (citations omitted).   Thus, the HCSO is dismissed as a party to this action.

B. Individual Defendants

Mr. Lewis sues Defendants Ramesh, White, Brunson, Rose, Butler, Heather, and Doe in their individual capacities only.   (Doc. 8 at 3, 8).   "[T]here is no individual capacity liability under . . . the ADA."   *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005).   "Only public entities are liable for violations of Title II of the ADA." *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010).   Thus, the individual defendants will be dismissed from Mr. Lewis's ADA and RA claims.[4]

C. John Doe Defendant

Mr. Lewis appears to name "John Doe Housing Unit 5 Sergeant" as a defendant. (Doc. 8 at 4, 8, 10).   "As a general matter, fictitious-party pleading is not permitted in federal court."   *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).   The Eleventh Circuit has permitted claims against unknown defendants "only when use of

---

[4] At this initial screening stage of litigation, Mr. Lewis sufficiently alleges a deliberate indifference to his conditions of confinement claim under the Eighth Amendment.   *See, e.g., Macaya v. Aramark, Inc.*, 2021 WL 3742799, at \*4 (S.D. Fla. July 27, 2021), *report and recommendation adopted*, 2021 WL 3741716 (S.D. Fla. Aug. 24, 2021) (prisoner who alleged that prison officials knowingly provided him rotten food, no food at all, or food that did not comply with his medically prescribed gluten and soy free diet that caused him severe allergic reactions stated an Eighth Amendment claim for deliberate indifference to conditions of confinement under section 1983).

a 'John Doe' label is, 'at the very worst, surplusage' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma v. Gruler*, 808 Fed. App'x 872, 880 (11th Cir. 2020) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 & n.6 (11th Cir. 1992) (holding that the district court abused its discretion in denying a *pro se* plaintiff's motion to add as a defendant the "Chief Deputy of the Jefferson County Jail John Doe" because the description enabled service of process)). That is not the case here. Mr. Lewis's description of the defendant is limited to an allegation that he is a Sergeant who worked in housing unit 5 at the HCJ. (Doc. 8 at 4, 8, 10). Mr. Lewis is not even certain if he seeks to sue one or multiple defendants for this claim. (*See id.*).

Mr. Lewis's amended complaint does not describe the unknown defendant with nearly enough particularity to effectuate service of process. As such, Defendant John Doe will be dismissed from this action without prejudice.

D. Claims based on ignoring, delaying, or denying grievances

To the extent Mr. Lewis's amended complaint attempts to state claims against the Defendants related to the processing of his grievances (Doc. 8 at 10-11), such allegation fails to state a claim because inmates have "no constitutionally protected liberty interest in access to the prison's grievance procedure." *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014); *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). Additionally, "filing a grievance with a supervisory person does not

8

automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." *Jones v. Eckloff*, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (collecting cases). Thus, his claims challenging the handling of his grievances are dismissed.

Accordingly:

1. The amended complaint (Doc. 8) is **DISMISSED WITHOUT PREJUDICE**.

a. If Mr. Lewis wishes to amend his allegations to remedy the noted deficiencies, he shall file a second amended complaint within THIRTY DAYS of the date of this order.

b. To amend his amended complaint, Mr. Lewis must complete a new civil rights complaint form titled "Second Amended Complaint." The second amended complaint must include all of Mr. Lewis's claims and may not refer to or incorporate the original complaint or the amended complaint. The second amended complaint shall supersede all prior complaints. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

c. The second amended complaint shall be subject to initial screening under 28 U.S.C. § 1915.

2. If Mr. Lewis fails to file a second amended complaint within thirty days or fails to seek an extension of time, this order dismissing the amended complaint without prejudice will become a final judgment. "[A]n order dismissing a complaint with leave to amend within a specified time becomes a final judgment if the time allowed for

9

amendment expires without the plaintiff [amending his complaint or] seeking an extension.   And when the order becomes a final judgment, the district court loses 'all its prejudgment powers to grant any more extensions' of time to amend the complaint." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720–21 (11th Cir. 2020) (quoting *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126 (11th Cir. 1994)).

3. Mr. Lewis must advise the Court of any change of address.   He must entitle the paper "Notice to the Court of Change of Address" and must exclude any motions from the notice.   Failure to inform the Court of an address change may result in the dismissal of this case without further notice.

4. The Clerk is **DIRECTED** to mail to Mr. Lewis a copy of both the standard civil rights complaint form and this order.

**DONE and ORDERED in Tampa, Florida, on May 14, 2026.**

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

10